# United States Tax Court

162 T.C. No. 8

RAJU J. MUKHI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4329-22L.                                    Filed April 8, 2024.

————

P filed a petition with this Court challenging R's notice of determination related to approximately $11 million of foreign reporting penalties under I.R.C. §§ 6038(b) and 6677. The parties filed cross-motions for summary judgment on the issues of whether the settlement officer violated P's right to due process under the Fifth Amendment to the U.S. Constitution, whether the settlement officer abused his discretion in rejecting collection alternatives, and whether the penalties violated the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution.

*Held*: The settlement officer did not violate P's Fifth Amendment due process rights or his rights under I.R.C. § 6320 or 6330.

*Held, further*, the settlement officer did not abuse his discretion in rejecting P's collection alternatives that were significantly below his reasonable collection potential.

*Held, further*, R lacked authority to assess the penalties under I.R.C. § 6038(b) and therefore cannot proceed with collection actions as they relate to these penalties.

**Served 04/08/24**

*Held, further*, penalties imposed under I.R.C. § 6677 are not fines and therefore do not implicate the Excessive Fines Clause.

―――――――

*Sanford J. Boxerman* and *Michelle F. Schwerin*, for petitioner.

*Randall L. Eager*, *Alicia H. Eyler*, and *William Benjamin McClendon*, for respondent.

OPINION

GREAVES, *Judge*: This collection due process (CDP) case is before the Court on petitioner's Motion for Summary Judgment, filed December 29, 2022, and respondent's Motion for Partial Summary Judgment, filed January 4, 2023. The parties seek summary adjudication of the following issues: (1) whether the settlement officer violated petitioner's right to due process under the Fifth Amendment, (2) whether the settlement officer abused his discretion in rejecting petitioner's offers-in-compromise, and (3) whether the section 6038(b) and 6677 penalties violated the Excessive Fines Clause of the Eighth Amendment.[1] For the reasons set forth below, we answer the first two questions and the third question as it relates to the section 6677 penalties in the negative. We do not reach the Excessive Fines Clause analysis as it relates to the section 6038(b) penalties.

*Background*

The following facts are based on the parties' pleadings and motion papers, the attached declarations and exhibits, and the administrative record. *See* Rule 121(c). They are stated solely for purposes of deciding the parties' motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Missouri when he timely

―――――――

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

filed the petition. The parties have stipulated that this case is appealable to the U.S. Court of Appeals for the Eighth Circuit.

On May 20, 2022, respondent filed a Motion to Consolidate this case with petitioner's related deficiency case at Docket No. 15315-19. On July 21, 2022, we granted the motion and consolidated the cases for trial, briefing, and opinion. Petitioner's Motion for Summary Judgment and respondent's Motion for Partial Summary Judgment relate exclusively to the collection due process case.

I.      *Penalty Determination*

Between November 2001 and September 2005 petitioner created three entities: Sukhmani Partners II Ltd., a foreign corporation for U.S. tax purposes; Sukhmani Gurkukh Nivas Foundation, a foreign trust for U.S. tax purposes; and Gurdas International Ltd., a foreign trust for U.S. tax purposes. Through these entities, petitioner opened several foreign brokerage accounts. From 2005 through 2007 petitioner personally and through foreign entities transferred at least $9,729,249 to Gurdas International Ltd. From 2006 through 2008 petitioner withdrew at least $4,763,464 from Gurdas International Ltd.[2]

On June 5, 2014, petitioner was indicted on two counts of subscribing to false U.S. individual income tax returns and four counts of willful failure to file reports of foreign bank and financial accounts (FBAR) related to the above-described transactions. Petitioner entered a guilty plea, admitting to one count of subscribing to false U.S. individual income tax returns and one count of failure to file an FBAR. The plea agreement expressly stated that it did not limit the rights of the U.S. Government to take any civil or administrative actions against petitioner, except as agreed regarding civil liability for failure to file an FBAR.

After the guilty plea, respondent began an examination of petitioner's liability for civil tax penalties related to the foreign entities. During the examination, petitioner filed under protest various international information returns related to his foreign investments. Between July 21, 2015, and January 13, 2016, petitioner filed Forms 5471, Information Return of U.S. Persons With Respect to Certain

---

[2] The facts in this paragraph have been alleged by respondent and challenged by petitioner. The issues in this opinion do not implicate the veracity of transactions leading to the civil tax penalties. These alleged facts are stated solely for explanatory purposes.

Foreign Corporations, related to his interest in Sukhmani Partners II Ltd. for tax years 2005 through 2013. On September 29, 2016, petitioner filed Forms 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts, related to contributions petitioner made and distributions he received from Sukhmani Gurkukh Nivas Foundation for tax years 2005 through 2013. On the same day, petitioner filed Forms 3520–A, Annual Information Return of Foreign Trust With a U.S. Owner, disclosing his interest in Sukhmani Gurkukh Nivas Foundation for tax years 2005 through 2013.

At the conclusion of the examination, respondent issued a notice letter, dated September 6, 2017, informing petitioner that respondent assessed $5,072,449 in penalties under section 6677 for failure to timely file Form 3520 for tax years 2005 through 2008.[3] Respondent also assessed $5,920,419 in penalties under section 6677 for failure to timely file Form 3520–A for tax years 2005 through 2010. The next day respondent issued an additional letter informing petitioner that he assessed $120,000 in penalties under section 6038(b) for failure to timely file Form 5471 for tax years 2002 through 2013. This opinion will refer to the penalties under sections 6038(b) and 6677 collectively as foreign reporting penalties. Both letters informed petitioner of his right to a postassessment conference. Petitioner filed a protest with the IRS Office of Appeals (Appeals Office).[4]

## II.   *Postassessment Conference*

The case was assigned to an Appeals officer (AO) in the Appeals Office, Area 11 (International Operations). AO verified that he had no prior involvement with petitioner. Between April 4, 2018, and March 25, 2019, AO reviewed petitioner's challenge to the foreign reporting penalties. His review included correspondence with petitioner and research related to petitioner's underlying liability challenge.

AO concluded his review and on May 9, 2019, issued two Letters 1277, Penalty Appeal Decision, which stated that there were no grounds for penalty abatement and that petitioner's case with the Appeals Office was closed. Respondent attached to the letters a copy of the Appeals

---

[3] All dollar amounts are rounded to the nearest dollar.

[4] On July 1, 2019, the Internal Revenue Service Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

Case Memorandum, detailing AO's determinations regarding each of petitioner's arguments.

### III.  *CDP Notices and Hearing*

During the postassessment conference, respondent began taking collection actions related to the foreign reporting penalties. Respondent issued CP90, Final Notice–Notice of Intent to Levy and Notice of Your Right to a Collection Due Process Hearing, dated July 9, 2018. Petitioner timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting a CDP hearing related to this notice. Petitioner checked the boxes on Form 12153 indicating that he was interested in an installment agreement and that he could not pay the balance. Petitioner also indicated that he wanted to challenge the underlying liability.

Respondent issued Letter 3172, Notice of Federal Tax Lien Filing and Your Rights to a Hearing under IRC 6320, dated November 27, 2018, related to the foreign reporting penalties. Petitioner timely filed Form 12153, requesting a CDP hearing based on this notice. On his request, petitioner indicated that he was interested in an installment agreement and withdrawal of the lien. Petitioner also sought to challenge his underlying liability for the foreign reporting penalties. The two CDP requests were consolidated into one CDP hearing and assigned to a settlement officer (SO1). SO1 reviewed petitioner's requests and determined that he had no prior involvement with petitioner.

On June 6, 2019, SO1 issued Letter 4837, Appeals Received Your Request for Collection Due Process Hearing, confirming receipt of petitioner's CDP hearing request and scheduling a telephone conference for July 8, 2019. The letter also requested that petitioner submit financial information related to the requested collection alternatives. At the request of petitioner, the CDP hearing was rescheduled for August 14, 2019.

Before the CDP hearing, SO1 determined that the underlying liability challenge would need to be referred to International Operations for technical advice because the penalties related to foreign information reporting. At the CDP hearing, SO1 informed petitioner of this referral and delayed discussion of the underlying liability until he received International Operations' recommendation. The parties agreed to defer consideration of collection alternatives until the receipt of this

recommendation. After the conference, petitioner submitted a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Before International Operations' recommendation was received, the case was reassigned to another settlement officer (SO2). SO2 received a message from International Operations that it had already considered petitioner's underlying liability and would not consider the arguments again. SO2 attempted to schedule an additional conference for November 7, 2019, but petitioner did not appear. On November 13, 2019, SO2 held a conference with petitioner. SO2 explained the International Operations message and requested financial information that would allow him to consider collection alternatives.

After this meeting, petitioner offered an installment agreement of $2,000 per month, which SO2 rejected because he was not aware of the submission of any financial information. SO2 later discovered that petitioner had provided financial information to SO1 and reviewed the submitted information in the light of petitioner's installment agreement offer. On Form 433–A, petitioner reported that his individual equity in his assets, adjusted down to 80% of the value for potential tax consequences and withdrawal penalties, was $3,860,533. Petitioner reported that his total household income was $22,761 and his total monthly household expenses were $20,479. Thus, petitioner reported a net difference between his income and expenses of $2,282. After considering this financial information and petitioner's substantial assets, SO2 rejected petitioner's installment offer. Petitioner did not offer an alternative installment offer. Rather, petitioner informed SO2 that he would like to be considered for an offer-in-compromise (OIC), and SO2 agreed to consider such an offer.

Petitioner submitted two alternative OICs. On Form 656, Offer in Compromise, petitioner proposed a one-time payment of $1,000,000 and withdrawal of 22 refund lawsuits. In a letter to SO2, petitioner submitted an alternative OIC, which sought a global settlement of all outstanding tax issues by offering to liquidate specific assets and transfer the proceeds to the IRS, valued at approximately $2,672,717, and to withdraw 22 refund lawsuits. As part of the alternative OIC, petitioner also sought to be absolved from any income tax generated from the liquidation of these assets. The OICs were sent to the Centralized Offer in Compromise Unit (COICU) for review.

After petitioner sent his OICs, the CDP hearing was assigned to a new settlement officer (SO3). SO3 determined that he had no prior involvement and reviewed the casefile. After receiving the entire administrative file, SO3 determined that there were outstanding issues relating to the underlying liability. SO3 referred the case to International Operations, and it was assigned to AO to review the case. AO contacted SO3 and explained that he had already considered the issues and directed SO3 to the Appeals Case Memorandum. SO3 reviewed the Appeals Case Memorandum and conducted independent research of the cited sources and petitioner's file to determine whether he agreed with AO's determinations on the liabilities. SO3 determined that he agreed with AO's determinations regarding the underlying liability.

After this determination and the receipt of updated financial information, SO3 considered petitioner's OICs. SO3 reviewed COICU's recommendation on the OICs. COICU determined that petitioner's reasonable collection potential (RCP) was $4,266,334. COICU also determined that petitioner's monthly income was $23,166. On the basis of this information, COICU recommended rejecting petitioner's OICs.

Considering the new financial information, SO3 determined that petitioner's RCP was $4,682,596. SO3 considered arguments petitioner raised to reduce the equity in the assets, including current inability to withdraw funds, but rejected these arguments because the discount applied to the Form 433–A accounted for these arguments. Averaging petitioner's last three years of income, SO3 determined that petitioner's monthly income was $20,214. Using the lower COICU RCP, SO3 determined that the OICs were insufficient because of the large equity petitioner had in assets.

SO3 scheduled a conference for November 11, 2021, which was rescheduled to November 17, 2021, in observation of Veterans Day. SO3 explained to petitioner his analysis regarding the adequacy of the OICs and the merits of the underlying liability challenges. After providing petitioner additional time to submit other financial documents, SO3 sustained the collection actions. SO3 issued a notice of determination, dated February 9, 2022.

Petitioner timely filed a petition in this Court asking for review of the notice of determination. In his petition he alleged a jurisdictional defect in that the notice of determination he received failed to include two attachments referenced in the notice: the Appeals Case

Memorandum, detailing the resolution of the underlying liability challenges; and the calculations of his RCP. Additionally, petitioner contended that SO3 violated his Fifth Amendment due process rights by engaging with AO during the CDP hearing, that SO3 erred in concluding that he was liable for the foreign reporting penalties and the calculation of such penalties, that SO3 erred in denying his proposed collection alternatives, and that the foreign reporting penalties violated the Excessive Fines Clause.

On December 29, 2022, petitioner filed a Motion for Summary Judgment, asking this Court to decide as a matter of law that respondent violated his right to due process under the Fifth Amendment because SO3 was not independent. On January 4, 2023, respondent filed a Motion for Partial Summary Judgment. Respondent asked this Court to find as a matter of law that (1) the notice of determination was valid, (2) SO3 did not violate petitioner's Fifth Amendment due process rights, (3) SO3 did not abuse his discretion in rejecting petitioner's OICs, and (4) the foreign reporting penalties do not violate the Excessive Fines Clause.[5] On February 7, 2023, respondent filed a Response to Motion for Summary Judgment. After an extension of time, petitioner submitted a Response to Motion for Partial Summary Judgment. Therein, he conceded that the notice of determination was valid but reserved the right to later challenge whether the attachments were included.

After the parties filed their respective motions, we held in a separate case that the IRS lacks the authority to assess the section 6038(b) penalty. *See Farhy v. Commissioner*, No. 10647-21L, 160 T.C., slip op. at 5–14 (Apr. 3, 2023). The IRS later appealed *Farhy* to the U.S. Court of Appeals for the District of Columbia Circuit. *See Farhy v. Commissioner*, No. 23-1179 (D.C. Cir. filed July 24, 2023). Respondent filed a Notice of Judicial Ruling acknowledging the *Farhy* decision; however, neither party sought to supplement its respective motion.

On December 14, 2023, we ordered the parties to file briefs on the implication of *Farhy* for the current case and the necessity to reach the Excessive Fines Clause issue as it relates to the section 6038(b) penalty. In his brief, respondent argued that we should overrule *Farhy* and hold that he has the authority to assess penalties under section 6038(b). Following that approach, respondent argues we should resolve the

---

[5] Because both parties ask for summary adjudication on the Fifth Amendment claim, we will consider the motions together on this issue.

Excessive Fines Clause issue. In contrast, petitioner argues that, if affirmed, *Farhy* resolves this case with respect to the section 6038(b) penalties. Petitioner has indicated his intent to request the Court to determine that respondent cannot proceed with the collection actions as they relate to the section 6038(b) penalties if *Farhy* is affirmed by the D.C. Circuit. Both parties agree that *Farhy* does not prevent this Court from determining whether the penalties under section 6677 violate the Excessive Fines Clause.

*Discussion*

I.  *Jurisdiction to Review the Notice of Determination*

We are a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. *See* § 7442; *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). In a CDP case our jurisdiction is predicated upon the issuance of a valid notice of determination. *See LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 28 (2016), *aff'd*, 684 F. App'x 744 (10th Cir. 2017). A valid notice of determination is "a written notice that embodies a determination to proceed with the collection of the taxes in issue." *Lunsford v. Commissioner*, 117 T.C. 159, 164 (2001). The notice of determination must specify the taxable period, liability, and collection action to which the notice relates. *See LG Kendrick, LLC*, 146 T.C. at 28. The notice must also include the settlement officer's determination as to whether the collection actions may proceed. *See Lunsford*, 117 T.C. at 165. A technical error in the notice of determination will not render it invalid unless the taxpayer is prejudiced or misled by the error. *See LG Kendrick, LLC*, 146 T.C. at 29; *John C. Hom & Assocs., Inc. v. Commissioner*, 140 T.C. 210, 213 (2013) ("Mistakes in a notice will not invalidate it if there is no prejudice to the taxpayer.").

Although petitioner conceded that the notice of determination was valid for purposes of these motions, we have an independent obligation to consider whether the notice of determination is valid because the parties may not confer jurisdiction on this Court by agreement or concession. *See LG Kendrick, LLC*, 146 T.C. at 27. The notice of determination specifies that the determination relates to the foreign reporting penalties, properly lists the years at issue, and specifies the lien and levy actions considered. The notice of determination expressly sets out that SO3 sustained the collection actions. These details alone make the notice of determination valid, regardless of whether the notice mailed to petitioner included the

attachments. *See id.* at 28. Further, petitioner timely filed his petition with this Court and therefore was not prejudiced by any alleged error. *See Blue Lake Rancheria Econ. Dev. Corp. v. Commissioner*, 152 T.C. 90, 102 (2019) (holding that addressing a notice of determination to only one taxpayer did not prejudice the other taxpayers covered by the notice because they timely filed a petition for review). Thus, the notice of determination is valid, and we have jurisdiction to review respondent's determination to sustain collection actions.

II. *Motion for Summary Judgment and Motion for Partial Summary Judgment*

A. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment where there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002). Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. *See Bond v. Commissioner*, 100 T.C. 32, 36 (1993). The nonmoving party may not rest upon the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine dispute for trial. *See* Rule 121(d); *Bond*, 100 T.C. at 36.

Our decision in this case is appealable to the Eighth Circuit. *See* § 7482(b)(1)(G)(i), (2). That court has held that, where de novo review is not applicable, the scope of review in a CDP case is confined to the administrative record. *See Robinette v. Commissioner*, 439 F.3d 455, 459–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). To the extent that our consideration is limited to the administrative record, as discussed below, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)).

B. *Standard of Review*

Section 6320(b) permits a taxpayer to challenge an IRS lien filing before the Appeals Office, and section 6320(c) (incorporating section

6330(d)) provides for Tax Court review of an Appeals Office determination. Section 6330(b) permits a taxpayer to challenge a proposed levy before the Appeals Office, and section 6330(d) provides for Tax Court review of an Appeals Office determination. The Code does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case; rather, we are guided by our precedents.

Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the determination regarding the underlying liability de novo. *See Sego v. Commissioner*, 114 T.C. 604, 609–10 (2000). We review all other determinations for abuse of discretion. *See id.* at 610. Abuse of discretion exists when a determination is "arbitrary, capricious, or without sound basis in fact or law." *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Section 6330(c)(2) permits a taxpayer to challenge "the existence or amount of the underlying tax liability" in a CDP hearing if he did not previously receive a notice of deficiency and did not have a prior opportunity to challenge the tax liability.

Neither the Code nor the regulations define "underlying tax liability." *See Montgomery v. Commissioner*, 122 T.C. 1, 7 (2004). Underlying tax liabilities include any amounts owed by the taxpayer pursuant to the tax laws, including the tax deficiency, additions to tax, and statutory interest. *See Katz v. Commissioner*, 115 T.C. 329, 339 (2000).

There is no dispute that petitioner was entitled to challenge his underlying liability because his postassessment conference had not concluded before his request for a CDP hearing. *See Perkins v. Commissioner*, 129 T.C. 58, 66–67 (2007). To determine whether to apply a de novo or an abuse of discretion standard of review to each issue, we must determine which, if any, of the issues relate to his underlying tax liability.

Petitioner's Fifth Amendment challenge to SO3's independence is not a challenge to his underlying tax liability. *See id.* at 69–71. Similarly, petitioner's challenge to SO3's rejection of his collection alternatives does not relate to his underlying tax liability. *See Robinette v. Commissioner*, 439 F.3d at 462–63; *Pough v. Commissioner*, 135 T.C. 344, 350 (2010). We will review these determinations for abuse of discretion and our review is limited to the administrative record. *See Robinette v. Commissioner*, 439 F.3d at 459–62; *Sego*, 114 T.C. at 610.

As for petitioner's Excessive Fines Clause argument, it is not necessary to determine the standard of review. "Where, as here, we are faced with a question of law . . . , our holding does not depend on the standard of review we apply. We must reject erroneous views of the law." *Manko v. Commissioner*, 126 T.C. 195, 199 (2006); *see also Farhy*, 160 T.C., slip op. at 4–5; *Freije v. Commissioner*, 125 T.C. 14, 32–37 (2005) (setting aside a determination to proceed with collection because the Appeals officer's verification that the requirements of applicable law were met was "incorrect" because of an "error as a matter of law," specifically an assessment that was "simply invalid," and holding that a taxpayer's ability to dispute his underlying tax liability pursuant to section 6330(c)(2)(B) does not cure an invalid assessment).

### C.    *Due Process Rights Under the Fifth Amendment*

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Petitioner alleges that respondent violated his Fifth Amendment due process rights by (1) failing to provide a hearing in front of an impartial settlement officer as required by sections 6320(b)(3) and 6330(b)(3) and (2) taking a position in this litigation inconsistent with prior criminal proceedings.

As a preliminary matter, it should be noted that the Due Process Clause does not require respondent to conduct a hearing before his collection actions where there is an adequate opportunity for later judicial review. *See Phillips v. Commissioner*, 283 U.S. 589, 595–99 (1931); *Robinette v. Commissioner*, 439 F.3d at 458. However, with the enactment in 1998 of sections 6320 and 6330, Congress created certain pre-collection rights and privileges. Therefore, petitioner's Fifth Amendment challenges are more properly characterized as challenges to respondent's compliance with sections 6320 and 6330.

Sections 6320(b)(3) and 6330(b)(3) provide that a CDP hearing "shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified . . . before the first hearing." The Code does not define "no prior involvement." *See Harrell v. Commissioner*, T.C. Memo. 2003-271, slip op. at 16, *supplemented by* T.C. Memo. 2003-312. However, the regulations provide that prior involvement includes "participation or involvement in a matter (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax period shown

on the CDP notice." *See* Treas. Reg. §§ 301.6320-1(d)(2), Q&A-D4, 301.6330-1(d)(2), Q&A-D4.

It is undisputed that SO3 had no prior involvement related to the tax liabilities for the years at issue. Further, the parties do not dispute that SO3 was required to refer this matter to International Operations because petitioner's challenge to his underlying liability involved international reporting penalties. *See Internal Revenue Manual* (IRM) 8.7.3.7 (Oct. 1, 2012). Rather, the parties dispute whether AO's communication with SO3 during the CDP hearing violated sections 6320(b)(3) and 6330(b)(3). AO clearly had prior involvement in the dispute of the foreign reporting penalties via his participation in the postassessment conference. AO was the Appeals officer assigned to petitioner's postassessment conference and rendered the final decision not to abate the foreign reporting penalties. We must determine whether AO is deemed to have "conducted" the CDP hearing as contemplated by sections 6320(b)(3) and 6330(b)(3).

We have considered a similar situation in which an OIC was reviewed by an attorney who had prior involvement. *See Isley v. Commissioner*, 141 T.C. 349, 367 (2013). In that case a settlement officer referred a proposed OIC to the IRS Office of Chief Counsel as required by policy. *Id.* The attorney in the IRS Office of Chief Counsel who received the proposed OIC had previously worked on tax issues related to the taxpayer's prior bankruptcy. *Id.* After reviewing the OIC, the attorney recommended denying the OIC in a memorandum to the settlement officer. *Id.* We determined that the attorney's involvement did not cause him to become "the de facto Appeals officer" conducting the hearing, and thus section 6330(b)(3) did not apply to him. *Id.* We went on to hold that even if the attorney was the de facto Appeals officer, he did not have prior involvement with the specific tax years at issue. *Id.*

The rationale in *Isley* is equally compelling in this case. AO was not present during any of the conferences with petitioner, and the record does not indicate that he had extensive conversations with SO3. After SO3 was informed that AO was assigned to the underlying liability issue, communication between the two appears limited to AO informing SO3 that he had previously considered the issues and directing SO3 to the memorandum he had previously drafted. AO logged a mere 45 minutes in his case activity report once he was assigned to the CDP hearing. As with the attorney in *Isley*, we do not find that this limited involvement with the CDP hearing made AO the "de facto Appeals

Officer" conducting the hearing. Rather, SO3 was the settlement officer to which section 6330(b)(3) applies.

Furthermore, there is no evidence that AO's involvement impeded SO3's impartiality. After SO3 received the memorandum, he compared the issues in the memorandum to those raised by petitioner and determined that they were identical. SO3 then reviewed AO's analysis and researched the law AO had relied upon and consulted the record. Only after this research, SO3 determined that he agreed with AO's findings on the underlying liability. SO3 exercised his independent authority to determine whether the foreign reporting penalties were properly assessed. Therefore, any involvement by AO did not bear on SO3's impartiality.

Petitioner asserts that SO3 could not have performed a complete review of the underlying liability challenges because he logged three hours on the issue. In addition to the three hours that petitioner highlights, SO3 made other entries into his case report indicating he worked on the underlying liability issue but reported the time as zero. SO3's consideration of the issues, rather than the time spent, is the focus of our analysis. SO3's case report details how he considered each issue raised by petitioner and made a determination based on his research confirming AO's determination. Thus, petitioner's Fifth Amendment and CDP rights were not violated because of AO's limited involvement.

Petitioner raises one additional Fifth Amendment argument in his petition. Petitioner vaguely asserts: "Respondent's assertion of the Penalties was improperly inconsistent with its position in a prior proceeding involving Petitioner." Petitioner had an opportunity to further expand on this allegation in either his Motion for Summary Judgment or his Response to Motion for Partial Summary Judgment but failed to do so. Assuming petitioner is arguing that his plea agreement precludes respondent's assertion of the foreign reporting penalties, we reject this argument because petitioner's guilty plea specifically stated that it did not limit the rights of the Government to pursue civil action against petitioner. Accordingly, respondent did not violate petitioner's Fifth Amendment due process rights or his rights under sections 6320 and 6330.

D. *Collection Alternatives: OICs*

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability, and the regulations set forth three grounds for such a

compromise: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. *See* Treas. Reg. § 301.7122-1(b). Petitioner proposed to compromise his liability based on doubt as to collectibility. The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income render full collection unlikely. *See id.* para. (b)(2). Conversely, the IRS may reject an OIC where the taxpayer's RCP is greater than the amount he proposes to pay. *See Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013). RCP is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection and adding to that product the realizable net equity in the taxpayer's assets. *See id.* at 485.

A settlement officer is generally directed to reject offers substantially below the taxpayer's RCP. *See* Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517. In some cases, the Secretary will accept an offer of less than the RCP of the case if there are special circumstances. *See id.* Special circumstances are (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the RCP of the case or (2) if no demonstration of such suffering can be made, circumstances justifying acceptance of an amount less than the reasonable collection potential of the case based on public policy or equity considerations. *See Murphy*, 125 T.C. at 309; IRM 5.8.11.3.1 (Oct. 4, 2019), 5.8.11.3.2.1 (Oct. 4, 2019).

SO3 did not abuse his discretion in rejecting petitioner's OICs because petitioner's offers were significantly less than his RCP as determined by COICU and SO3.[6] COICU determined petitioner had an RCP of $4,266,334. SO3 reviewed this calculation, and based on updated financial information, increased petitioner's RCP to $4,682,596. SO3 determined that even using the lower COICU RCP, petitioner's OICs, valued at $1,000,000 and $2,672,717 respectively, were significantly lower than his RCP.

Petitioner argues that SO3 did not meaningfully review the OICs; however, the administrative record does not support this argument. SO3 performed an in-depth review of petitioner's financial

---

[6] Respondent also alleges that SO3 did not have to consider the alternative OIC because it was not submitted on the proper form. However, we could find no basis for this argument in SO3's case activity report.

documentation to determine his RCP. In reviewing petitioner's offers, SO3 adopted the RCP proposed by the COICU, which allotted petitioner $416,263 of net equity in assets from which to pay living expenses. SO3 communicated to petitioner his intent to reject the OICs and allowed petitioner additional time to submit a revised OIC or additional supporting documents. Petitioner did not provide either. SO3 also considered petitioner's arguments that he could not liquidate certain assets and needed to retain assets for his support but determined that liquidity issues were already factored into the RCP calculation by Form 433–A. Although petitioner takes issue with this "mechanical" review of his OICs, this review is not arbitrary or capricious as it complies with the applicable IRS guidance relevant to analyzing an OIC. *See* Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. at 517. Therefore, SO3 did not abuse his discretion in rejecting petitioner's OICs because petitioner's RCP greatly exceeded his OICs.

E. *Eighth Amendment Excessive Fines*

Section 6038(b)(1) imposes a penalty of $10,000 for each tax year for which a United States person does not file an information return disclosing ownership of a foreign corporation. Section 6677 imposes penalties for failure to file information returns related to foreign trusts. Section 6677 imposes a penalty for failure to file an information return disclosing ownership[7] of a foreign trust as required by section 6048(b). *See* § 6677(a) and (b). For returns required to be filed by December 31, 2009, the penalty is equal to 5% of the gross value of the portion of the trust assets that a United States person is treated as owning. For returns required to be filed after December 31, 2009, the penalty is equal to the greater of $10,000 or 5% of the gross value of the portion of the trust assets that a United States person is treated as owning.

Section 6677 also imposes a penalty for failure to file an information return disclosing the transfer of money to a foreign trust as required by section 6048(a). *See* § 6677(a). For returns required to be filed by December 31, 2009, the penalty is equal to 35% of the gross value of property transferred. For returns required to be filed after that date, the penalty is equal to the greater of $10,000 or 35% of the gross value of property transferred.

---

[7] A person may be deemed the owner of a trust under the grantor trust rules of sections 671 through 679. *See* § 6048(b)(1).

Petitioner contends that the penalties imposed under sections 6038(b) and 6677 violate the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution. We consider the challenge to each penalty in turn.

1. *Section 6038(b) Penalties*

Petitioner asks that we find section 6038(b) unconstitutional; however, it is a well-established principle of constitutional law that we should "avoid[] unnecessary adjudication of constitutional issues." *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995); *see also Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193 (1909) ("Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons."); *United States v. Allen*, 406 F.3d 940, 946 (8th Cir. 2005) ("When we are confronted with several possible grounds for deciding a case, any of which would lead to the same result, we choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues."). While a court need not contort the law to find a nonconstitutional ground for deciding a case, we also cannot ignore a clear statutory ground for resolving the issue when it is looking us right in the face. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329 (2010) ("It is not judicial restraint to accept an unsound, narrow argument just so the Court can avoid another argument with broader implications. Indeed, a court would be remiss in performing its duties were it to accept an unsound principle merely to avoid the necessity of making a broader ruling."); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 294 (1982) ("[T]his self-imposed limitation on the exercise of this Court's jurisdiction has an importance to the institution that transcends the significance of particular controversies.").

Here, there is an independent, nonconstitutional basis to resolve the issue of whether respondent's determination to sustain collection actions related to section 6038(b) was an abuse of discretion: respondent lacks the authority to assess penalties under section 6038(b). *See Farhy*, 160 T.C., slip op. at 5–14. Respondent assessed penalties under section 6038(b) against petitioner without the authority to do so, which consequently means that respondent may not proceed with the collection of the section 6038(b) penalties from petitioner via the proposed levy or lien. *See Farhy*, 160 T.C., slip op. at 14. Therefore, there is no need to reach the constitutional issue of whether the penalties under section 6038(b) violate the Excessive Fines Clause.

Respondent argues that we should revisit and overrule our holding in *Farhy* because he believes it was decided incorrectly. We adhere to the doctrine of stare decisis and thus afford precedential weight to our prior reviewed and division opinions. *See Sanders v. Commissioner*, No. 15143-22, 161 T.C., slip op. at 6 (Nov. 2, 2023). Respondent's argument that *Farhy* was decided incorrectly is not sufficient justification alone to warrant reconsideration of its holding. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014).

Moreover, the mere fact that *Farhy* is currently on appeal at the D.C. Circuit is insufficient. This case is appealable to the Eighth Circuit, and therefore any ruling from the D.C. Circuit would not be binding on this proceeding. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970) (stating that when a "squarely [o]n point" decision of the appellate court to which an appeal would lie contradicts our own precedent, we will follow the appellate court's decision), *aff'd*, 445 F.2d 985 (10th Cir. 1971). The Eighth Circuit has not spoken as to the question of whether the IRS has the authority to assess section 6038(b) penalties. Where we are not constrained by precedent of the pertinent court of appeals, we follow stare decisis and apply our own precedent.[8] *See Lawrence v. Commissioner*, 27 T.C. 713, 716–17 (1957), *rev'd per curiam on other grounds*, 258 F.2d 562 (9th Cir. 1958).

We further see no reason to delay resolution of this issue until the resolution of the appeal in *Farhy* by the D.C. Circuit. Rule 121(g)(2) permits the Court to grant a motion for summary judgment on grounds not raised by the parties after notice and a reasonable time to respond. Our order to brief the implications of *Farhy* gave adequate notice of the possibility that we may grant partial summary judgment for petitioner on this issue, and both parties had reasonable time to respond in the form of their briefs. Respondent could not assess the penalties under section 6038(b), and therefore as a matter of law respondent may not proceed with the collection of the section 6038(b) penalties from petitioner via the proposed levy or lien. We will grant partial summary judgment on this issue in favor of petitioner.

---

[8] To the extent the IRS had the authority to assess penalties under section 6038(b), the analysis on the Excessive Fines Clause issue would be identical to the section 6677 penalties analysis *infra*.

2. *Section 6677 Penalties*

The Eighth Amendment to the Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). The touchstone of whether a fine violates the Excessive Fines Clause is the "principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Therefore, we must first determine whether the section 6677 penalties are fines and then if they are fines, whether they are excessive.

To determine whether a penalty is a fine, we must examine whether the penalty serves the purpose of punishing the offense. *See Austin*, 509 U.S. at 610. This Court has consistently found that the purpose of civil tax penalties and additions to tax is to encourage voluntary compliance, and therefore they are not punitive. *See Thompson v. Commissioner*, 148 T.C. 59, 66 (holding that the civil fraud penalty under section 6662A is not punitive); *Ianniello v. Commissioner*, 98 T.C. 165, 187 (holding that the addition to tax under section 6653 is not punitive); *Bell Cap. Mgmt., Inc. v. Commissioner*, T.C. Memo. 2021-74, at *18 (holding that the civil fraud penalty under section 6663(a) is not punitive); *Gorra v. Commissioner*, T.C. Memo. 2013-254, at *63–64 (holding that gross valuation misstatement penalty under section 6662 is not punitive); *Mason v. Commissioner*, T.C. Memo. 2001-58, slip op. at 8 (holding that additions to tax under section 6651(a)(1) and (2) are not punitive).

Various other courts have agreed. In *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938), the Supreme Court analyzed whether a civil fraud penalty under the Revenue Act of 1928 was punishment or purely remedial in character. The Court found the penalty to be remedial, stating:

> The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of

investigation and the loss resulting from the taxpayer's fraud.

*Id.*; *see also Little v. Commissioner*, 106 F.3d 1445, 1454 (9th Cir. 1997) (declining to find that negligence and substantial understatement additions to tax under former sections 6653(a) and 6661 were fines because "[t]he additions to tax . . . are purely revenue raising because they serve only to deter noncompliance with the tax laws by imposing a financial risk on those who fail to do so"), *aff'g* T.C. Memo. 1993-281. In considering penalties under sections 6038(b) and 6677, other trial courts have found that the penalties serve a remedial purpose and are not fines. *See Dewees v. United States*, 272 F. Supp. 3d 96, 100–01 (D.D.C. 2017) (holding that penalties under section 6038(b) are not fines), *aff'd*, 767 F. App'x 4 (D.C. Cir. 2019); *In re Wyly*, 552 B.R. 338, 613 (Bankr. N.D. Tex. 2016) (determining that penalties under sections 6038(b) and 6677 are not fines).

Similarly, the U.S. Court of Appeals for the First Circuit has found that penalties related to failure to file an FBAR with the IRS are not fines. *See United States v. Toth*, 33 F.4th 1, 19 (1st Cir. 2022). The First Circuit reasoned that the FBAR penalties are not related to any criminal sanction but rather are imposed after the IRS determines that a taxpayer has failed to report a foreign bank account. *Id.* at 16. Additionally, FBAR penalties are related to fraud on the United States and loss to the public fisc. *Id.* at 17. The loss to the public fisc is caused not only by the lost tax revenue when these secret accounts are used for transactions but also by the great difficulty of law enforcement investigations into these accounts. *Id.* Finally, the fact that the penalty may be higher than the amount of tax owed on the concealed activity did not make the penalty a punishment. *Id.* at 18; *see also Mitchell*, 303 U.S. at 401 (finding that the government could require an individual who had failed to pay his taxes to both pay the amount owed in taxes that had not been paid as well as impose a 50% penalty for willfully failing to pay those taxes).

Petitioner does not cite any relevant cases in support of his assertion that the section 6677 penalties violate the Excessive Fines Clause. Nothing in the text of the statute indicates that we should treat the section 6677 penalties differently from the other civil penalties. Like the civil penalties discussed above, the section 6677 penalties clearly serve the purposes of protecting revenue and reimbursing the Government for the heavy expense of investigation and fraud. The section 6677 penalties are primarily a method to safeguard the collection

of revenue as without such reporting many foreign entities having U.S. tax effects would be difficult to find and monitor. The purposes of these penalties are clear in petitioner's case. As evident from the consolidated deficiency case related to the tax years and transactions that form respondent's basis for the penalties, petitioner's failure to comply with his reporting obligations allegedly allowed him to avoid his federal income tax liabilities for years.

Finally, petitioner attempts to stave off summary judgment by arguing that we should allow a trial on this issue to fully develop the record because the Eighth Circuit has not ruled whether the section 6677 penalties are fines and the law is unclear on the issue. While the Eighth Circuit has yet to rule on this precise issue, it has continued to apply *Mitchell* to determine that civil tax penalties are not punitive. *See, e.g., Morse v. Commissioner*, 419 F.3d 829, 835 (8th Cir. 2005) (determining in a Double Jeopardy case that section 6663 civil fraud penalties serve a remedial purpose), *aff'g* T.C. Memo. 2003-332. Additionally, we find the overwhelming volume of precedent holding that civil tax penalties are not fines compels our determination that the section 6677 penalties are not fines. Further, petitioner has not indicated what relevant facts he wishes to further develop for appeal.

Assuming arguendo that the Excessive Fines Clause is implicated, the section 6677 penalties are not so grossly disproportionate as to violate the Eighth Amendment. To pass the constitutional proportionality inquiry under the Excessive Fines Clause, the amount of the forfeiture or fine must bear some relationship to the gravity of the offense that it is designed to punish. *See Bajakajian*, 524 U.S. at 334. A fine violates the Excessive Fines Clause if "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense." *Id.* at 337.

We have consistently held that similar penalties are not disproportionate to the fraud on the government and harm caused on the public fisc. *See Thompson*, 148 T.C. at 67–68 (holding that penalties under section 6662A were not fines and in the alternative that the 30% penalty was not grossly disproportionate); *Gorra*, T.C. Memo. 2013-254, at *62–63 (determining that the 40% gross misstatement penalties under section 6662(h) were not fines and in the alternative that the penalty was not grossly disproportionate); *see also United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017) (holding without analysis that even if penalties for failure to report foreign bank accounts were fines, $1.2 million of penalties that represented 50% of the value of the

undisclosed bank account were not grossly disproportionate to the fraud on the government and harm to the public fisc). Accordingly, even if the section 6677 penalties are fines, they do not violate the Excessive Fines Clause.

We conclude that the notice of determination is valid, and therefore we have jurisdiction to review the notice of determination. SO3 did not violate petitioner's Fifth Amendment due process rights or CDP rights through his interactions with AO. SO3 also did not abuse his discretion in rejecting petitioner's OIC proposals. Further, the IRS lacks assessment authority related to the section 6038(b) penalties and therefore cannot proceed with the collection actions as they relate to these penalties. Finally, the section 6677 penalties do not violate the Excessive Fines Clause.

Accordingly, we will grant respondent's Motion for Partial Summary Judgment, filed January 4, 2023, in part. We will deny petitioner's Motion for Summary Judgment, filed December 29, 2022. Independent of the motions, we will grant partial summary judgment in favor of petitioner on the issue of whether respondent may proceed with the collection actions as they relate to the section 6038(b) penalties.

To reflect the foregoing,

*An appropriate order will be issued.*